CHEHARDY, Judge.
This is an appeal by defendant from a judgment revoking his probation. Since there is no right of appeal from such a judgment we will consider this matter as an application for supervisory writs.
Joseph Ussin, the defendant, pleaded guilty to a charge of indecent behavior with a juvenile and was sentenced to imprisonment at hard labor for three years. Execution of the sentence was suspended and defendant was placed on active probation for five years upon the following conditions: Defendant was fined $2,500 and court costs; he was ordered to serve 90 days in parish prison; and he was ordered to tour the Louisiana Department of Corrections at his own expense.
Approximately nine months thereafter Ussin’s probation officer requested the court to issue a show cause order why the probation should not be revoked because *535 defendant had violated several of the conditions thereof.
A rule to revoke was issued and a hearing was set for June 19, 1985. Service was ordered on the defendant and his attorney. The attorney was present at the hearing, but no service had been made on defendant, although several attempts had been made to serve him at two different addresses. The state attorney then asked for an instanter attachment, but the trial court, over the objection of defense counsel, proceeded with the hearing.
Evidence was given by James Pierre, Jr., the probation officer, who testified defendant had refused to cooperate with him in any way, he would not show up at the probation office when requested to do so, and he had made no effort to pay the fine or court costs. The court then granted the revocation, reinstated the original sentence, and ordered an attachment for the arrest and detention of defendant.
In this court defendant makes only one assignment of error: that the trial court was without authority to hold a revocation hearing without valid service on the accused.
The codal articles governing the matter with which we are here concerned are LSA-C.Cr.P. arts. 899 and 900. Article 899 provides that during probation and suspension of sentence the court may issue a summons to appear and answer a charge of violation of a condition of probation and that such summons' shall be personally served upon the accused. Article 900 provides that after service of summons the court shall order the accused to be brought before it for hearing without unnecessary delay.
The Louisiana Supreme Court has required strict compliance with the due process standards set by the United States Supreme Court in the case of Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), before a defendant’s probation may be revoked.
As set forth in State v. Davis, 375 So.2d 69, 72 (La.1979):
“In Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Supreme Court-adopted the minimum requirements of due process that Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), held applicable to parole revocation hearings, and applied them to probation revocation hearings. As established by the Court, these minimum requirements of due process are:
‘(a) Written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a “neutral and detached” hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.’ 411 U.S. 786, 93 S.Ct. at 1761.
“Morrissey and Gagnon both recognized that the revocation decision has two analytically distinct components: The wholly retrospective factual question of whether the probationer has in fact acted in violation of one or more conditions of his parole, and if so, should the probationer be committed to prison or should other steps be taken to protect society and improve chances of rehabilitation. The court in Gagnon further noted the critical differences between criminal trials and probation revocation hearings, among them that formal procedures and rules of evidence are not employed. The court specifically held that: ‘Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty.’ 411 U.S. 782, 93 S.Ct. at 1159.” (Emphasis ours.)
*536 We understand the trial court’s concern that defendant may have been evading service, but the probation officer had been able to contact defendant many times and had visited defendant at his residence on several occasions. Thus it does not appear that he was concealing himself or attempting to flee the jurisdiction. He apparently comes and goes at various times and on the few occasions when service was attempted, defendant was unable to be located. Under the mandatory provisions of C.Cr.P. art. 899, defendant is entitled to personal service on a rule to revoke probation.
For the reasons assigned the order of June 19, 1985 revoking the probation of defendant Joseph Ussin and ordering the sentence of August 22, 1984 to be reinstated is reversed and set aside, and the case is remanded to the district court for further proceedings according to law and consistent with the views expressed herein.
REVERSED AND REMANDED.